## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GRASSROOTS ANALYTICS, LLC**<br>700 K Street NW<br>Washington, DC 20001<br><br>**Plaintiff**<br><br>v.<br><br>**KATE BARTON**<br>1527 Q Street, NW, #3<br>Washington, DC 20009<br><br>AND<br><br>**TALL POPPY LLC**<br>c/o Its Registered Agent<br>Eden McKissick-Hawley<br>9170 Moors Pl. N.<br>Dublin, OH 43017<br><br>AND<br><br>**EDEN MCKISSICK-HAWLEY**<br>9170 Moors Pl. N.<br>Dublin, OH 43017<br><br>**Defendants.** | Case No.: _____ |

### COMPLAINT

Plaintiff Grassroots Analytics, LLC ("Plaintiff" or "Grassroots") by and through its undersigned counsel, files this Complaint against Defendants Kate Barton ("Barton"), Tall Poppy LLC ("Tall Poppy"), and Eden McKissick-Hawley ("McKissick") (collectively, "Defendants").

### NATURE OF THE ACTION

1. Plaintiff brings this action for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; misappropriation of trade secrets under the Defend Trade Secrets Act, 18

U.S.C. § 1836, *et seq.*; violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; breach of fiduciary duty; breach of contract; conspiracy; and declaratory judgment.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, Grassroots, is a limited liability corporation formed under the laws of the State of Vermont with its principal place of business in Washington, D.C.

3. Defendant Tall Poppy is a limited liability corporation formed under the laws of the State of Ohio with its principal place of business in Ohio.

4. On information and belief, Eden McKissick-Hawley ("McKissick") is a resident of Ohio.

5. On information and belief, Kate Barton ("Barton") is a resident of the District of Columbia.

6. This court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the Plaintiff's claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the U.S. Constitution.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

9. Grassroots is a political data company that operates a high-end consumer database, leading the industry in quality contact information, political preference analysis, biographical

2

details, and net worth data. One of the many ways Grassroots maintains its competitive advantage is through investment, development, and maintenance of confidential, proprietary, and/or trade secret information including, but not limited to: (1) data on politically active individuals ("donor profile data"), (2) market research on new business opportunities, (3) pricing models, and (4) proprietary software to search, organize, and sort donor profile data. Grassroots' success depends on the confidentiality of its confidential, proprietary, and trade secret information.

10. On or about December 3, 2020, Plaintiff hired Barton as a West Region Campaign Fundraising Strategist. In that role, Barton was responsible for serving clients, maintaining data, and providing fundraising guidance and fundraising lists to customers.

11. As a part of the hiring process, Barton signed a Non-Disclosure Agreement (the "NDA"), which, in relevant part, provides:

> Receiving Party shall hold and maintain the Confidential Information in the strictest confidence for the sole and exclusive benefit of the Disclosing Party. Receiving Party shall carefully restrict access to Confidential Information to employees, contractors and third parties as is reasonably required and shall require those persons to sign nondisclosure restrictions at least as protective as those in this Agreement. Receiving Party shall not, without prior written approval of Disclosing Party, use for Receiving Party's own benefit, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of Disclosing Party, any Confidential Information. Receiving Party shall return to Disclosing Party any and all records, notes, and other written, printed, or tangible materials in its possession pertaining to Confidential Information immediately if Disclosing Party requests it in writing.

12. During the course of her employment with Plaintiff, Barton had access to Plaintiff's confidential, proprietary, and trade secret information, including, but not limited to: (1) data on politically active individuals ("Donor Profile Data"), (2) market research on new business opportunities, (3) pricing models, and (4) proprietary software to search, organize, and sort Donor Profile Data. This information is valuable, confidential, and proprietary to Plaintiff, and is not

generally known in the public domain. Plaintiff considers and treats such information and confidential, proprietary, and trade secret information.

13. In or around September 2021, Barton ceased to perform well in her role as the West Region Campaign Fundraising Strategist at Grassroots.

14. As such, Plaintiff moved Barton to work for Progressive Donor Advising, LLC ("PDA"), a Grassroots subsidiary of which Plaintiff was a member.

15. On December 6, 2021, upon receiving serious complaints about Barton's performance and judgement from one of its political candidate clients, Plaintiff terminated Barton's employment and initiated a repurchase of Barton's membership interest in PDA.

16. On Friday, December 10, 2021, Plaintiff discovered that, after terminating Barton, Barton began forwarding to her personal email address, emails containing Grassroots confidential, proprietary, and trade secret information.

17. For example, on Monday, December 6, 2021, after she was terminated, Barton sent Board reports, company code, and Donor Profile Data to her personal email address. **See Exhibit 1, Emails Barton sent herself from her (Grassroots) email address to her personal email address containing confidential, proprietary, and trade secret information.**

18. Additionally, Barton has used or exploited Plaintiff's confidential, proprietary, and trade secret information for an operational, commercial, or other purpose or in a manner that was detrimental to Plaintiff or disclosed, disseminated, imparted, or granted access to the confidential, proprietary, and trade secret information in violation of her NDA with Grassroots.

19. Specifically, leading up to and on December 6, 2021, Barton was communicating with McKissick-Hawley, with and for Tall Poppy and, directly or indirectly, True Blue Analytics, all of which directly compete for services with Grassroots in the same market about the

confidential, proprietary, and trade secret information (including Donor Profile Data) she stole from Grassroots.

20. By virtue of the actions listed above, Barton has violated the NDA for an operational, commercial, or other purpose or in a manner that is detrimental to Plaintiff and continues to directly or indirectly solicit, encourage, or otherwise communicate with Plaintiff's clients and/or competitors with the purpose of causing such persons to terminate their business relationships with Plaintiff.

21. Plaintiff has a substantial likelihood of success on the merits of its claims and a clear legal right to the relief requested.

22. Barton fully accepted the benefits of her employment at Plaintiff only to act deliberately, intentionally, and aggressively in defiance of the valid and enforceable NDA. Barton unquestionably violated and continues to violate the NDA.

23. Upon discovering the evidence of Barton's malfeasance, Grassroots promptly contacted undersigned counsel on December 10, 2021.

24. That same day, undersigned counsel sent letters to Barton (**Exhibit 2**), Tall Poppy (**Exhibit 3**) and True Blue Analytics (**Exhibit 4**) (collectively, the "Demand Letters").

25. In the Demand Letters, Grassroots' counsel outlined the evidence of Barton's malfeasance, the fact that Barton did not have authority to remove, duplicate, or distribute Grassroots' confidential data and files, and demanding that all Grassroots materials and/or data be returned to Grassroots by 9:00 AM on December 13, 2021.

26. On December 12, 2021, counsel for True Blue Analytics responded, stating:

> We have reviewed this matter with our client, which has confirmed that Mr. Coats has never communicated with Kate Barton regarding the substance of her work at Grassroots Analytics; that Mr. Bobo has never communicated with Ms. Barton at

all. that Ms. Barton never made any offer to sell or share any files or data of any kind, from Grassroots Analytics or anyone else, to anyone at True Blue Analytics; and that Ms. Barton has not shared or provided any files, data, or information of any kind to True Blue Analytics.

Accordingly, True Blue Analytics is not in possession of any materials, data, files or information of any kind taken from Grassroots Analytics.

**See Exhibit 5, 12/12/21 letter from Joseph Sandler to Daniel Ward.**

27. Grassroots reasonably relies on the factual representations made by Mr. Sandler, a member of the Maryland and District of Columbia Bars, in his 12/12/21 letter and does not name True Blue Analytics as a Defendant in this matter[1].

28. Barton also responded on December 12, 2021. In her response, she stated:

Hi Dan,

I hope you are enjoying your weekend. Given that the turnaround time provided for a response is outside of business hours, I wanted to respond now in good faith but will have a formal response from my legal counsel as soon as possible once business hours resume.

I will confirm to you that I have never sold "confidential Grassroots files or data" to any business or individual mentioned in this letter or otherwise operating as an employee of Grassroots Analytics, as the Director of Progressive Donor Advising, or as an individual.

Eden McKissick-Hawley is a dear, personal friend of mine resulting from our meeting at a DCCC training in August of 2019 and I know Eric Coates as a result of that relationship. I have never been in contact with Ben Bobo or True Blue Analytics, nor have I ever sold or shared or attempted to sell or share "confidential Grassroots files and data" to Ben Bobo or True Blue Analytics directly or indirectly. It is my understanding that Eden McKissick-Hawley and Eric Coates both performed business with Grassroots Analytics while I was an employee there. Eden McKissick-Hawley was a known client of mine while I was Director of Campaign Strategy at Grassroots Analytics and she is the owner of Tall Poppy Fundraising, so I will not speak further at this time to what is suggested in your letter. I have never as a Grassroots Analytics employee, as the Director of Progressive Donor

---

[1] Should these statements prove to be inaccurate, false, or fraudulent, Grassroots reserves the right to add True Blue Analytics as a party to this lawsuit and add claims relevant to these statements.

Advising, or as an individual, sold or shared or attempted to sell or share data to Eric Coates or any business entities he may be affiliated with.

I hope that is helpful and enough to satisfy any concerns. As I mentioned, my legal counsel will be in touch as soon as possible once business hours resume.

I look forward to clearing up any additional misunderstanding.

Best holiday wishes to you and yours,
Kate Barton

**See Exhibit 6 12/12/21 email exchange between Kate Barton and Daniel Ward.**

29. Grassroots' counsel promptly responded to Barton's email. In his response, Grassroots' counsel stated:

Hi Kate,

Thank you for your response. I appreciate what you said in your email, but am more concerned by what you have not said. In particular, you do not deny that, after your separation from Grassroots, you accessed confidential Grassroots files and data without authorization (and/or in excess of your authorization), copied confidential Grassroots files and data without authorization, and/or emailed confidential Grassroots files and data to your personal email address without authorization.

Your silence on this point is deafening. See the attached files, which are exemplary of the evidence we possess of your malfeasance. Our investigation continues, but just based on what we have discovered since Friday, I have been directed to file a complaint tomorrow against you for, *inter alia*, breach of contract, theft of trade secrets, and CFAA violations. We will seek immediate injunctive relief against you (and any others involved) to prevent you from further disseminating or using Grassroots trade secrets and confidential data.

Nothing in your email changes these facts. If there is a way to avoid what will certainly be a very protracted bit of litigation, I'd be happy to discuss. Unfortunately, your email, the glaring omissions therein, and the clear evidence we have already uncovered of your misdeeds, do not give me confidence that we can avoid going down this difficult path.

I urge you to have your counsel contact me as soon as is practicably possible (if you are indeed represented by counsel.) If you are represented by counsel, I can no longer communicate with you directly. Be advised that we will be filing our complaint and motion for a temporary restraining order against you tomorrow.

Thank you,

Dan Ward

**See Exhibit 7 12/12/21 email exchange between Kate Barton and Daniel Ward.**

30. Barton did not respond to this email.

31. On December 13, 2021, counsel for Tall Poppy responded, stating:

Dan:

Ice Miller LLP represents Tall Poppy LLC ("Tall Poppy") with respect to the letter you sent to Eden Mckissick-Hawley on December 10, 2021.

By way of a response to your demand, my client asked that I inform you that it does not possess any of the referenced Grassroots records, and consequently, it has no records that it can return to Grassroots.

Should you have any continued concerns, please contact me directly.

With regards,
Kristina

**See Exhibit 8 12/13/21 email exchange between Kristina Dahmann and Daniel Ward.**

32. Grassroots' counsel promptly responded to Tall Poppy's counsel's email. In his response, Grassroots' counsel stated:

Hi Kristina,

That does not correspond with the information and evidence we have, which incontrovertibly shows that Ms. Mckissick-Hawley solicited and received Grassroots trade secret information from Ms. Barton.

By way of example, but not exclusion, on November 27, 2021, Ms. Barton sent Ms. Mckissick-Hawley the name and private contact information of a Grassroots client.

Additionally, on December 2, 2021, Ms. Mckissick-Hawley asked Ms. Barton "Can I send u some lists to match with giving history ply," and offered to fly Ms. Barton to meet with her.

On December 6, 2021, Ms. Mckissick-Hawley stated to Ms. Barton "I feel relieved knowing we are going to be together" "Eric said to reach out to him. He wants u to help him with some things" and "We got this babe. Will make it into the blockbuster. You'll help me and Eric – get paid by that, stay stable financially- and

8

slowly build back the company of your dreams. And by slowly, I mean 2-3 months. Your life will be so awesome by February."

Also on December 6, 2021, Ms. Barton stated to Ms. Mckissick-Hawley "Damn ok I think I transferred everyone. *everything. Keeping my pitch meeting on the books just transferred to my personal email." Ms. Mckissick-Hawley replied "Yes Kate! U got this honey. And if u want to start using a kate@tallpoppy to make more official, happy to move you to our fajita! Hahahahaha. Gsuite. Autocorrect."

In another exchange, Ms. Barton stated to Ms. Mckissick-Hawley "It's such inside baseball. In the grand scheme, C2G is a bug on the windshield. Their reputation will worsen and we can take their clients away from them but not sure where it goes past that." To which Ms. Mckissick-Hawley replied "Can you send me list of who they work with at GA and I'll literally poach their asses tomorrow." Ms. Barton replied "Yes," and then sent Ms. Mckissick-Hawley a list of Grassroots' clients.

My investigation began Friday. We are still in the early days. I have little doubt that more evidence will emerge as the investigation progresses. What I have found to date shows that you have been misinformed by your client. Ms. Mckissick-Hawley, by and for Tall Poppy, did solicit and receive Grassroots' trade secret information.

As I am sure you can understand, my client is gravely concerned about these developments, and has directed me to move with all deliberate speed. We will be seeking immediate injunctive relief to prevent any further damage to Grassroots. Are you authorized to accept service for Tall Poppy and Ms. Mckissick-Hawley?

Thanks,

Dan Ward

**See Exhibit 9 12/13/21 email exchange between Daniel Ward and Kristina Dahmann.**

33. Barton remains a member of Grassroots' Board of Directors. As such, she has a fiduciary duty to act in Grassroots' interests.

**CLAIMS FOR RELIEF**

**<u>COUNT ONE</u>**
**BREACH OF CONTRACT**
**(Against Defendant Barton)**

34. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

9

35. As part of the hiring process, Barton signed an NDA that bound her from disclosing confidential, proprietary, and trade secret information.

36. Under the NDA, Barton was obligated to not "disclose to others, or permit the use by others for their benefit or to the detriment of" Plaintiff, any confidential information.

37. Barton breached her non-disclosure restrictive covenant by failing to maintain as confidential Plaintiff's confidential information, to prevent the disclosure of such information to unauthorized persons (e.g., Tall Poppy) and to prevent the use of such information for not authorized purposes.

38. As a result of Barton's breaches of her NDA, Plaintiff suffered substantial competitive and reputational harm in an amount that is not ascertainable at this time.

**COUNT TWO**
**VIOLATIONS OF THE ELECTRONIC COMMUNCIATIONS PRIVACY ACT, 18 U.S.C. § 2510, *et seq.***
**(Against Defendant Barton)**

39. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

40. The Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.* (the "ECPA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. . . ." 18 U.S.C. § 2510(2)

41. The ECPA defines "electronic communications system" as any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications. 18 U.S.C. § 2510(14).

42. The ECPA broadly defines the contents of a communication. Pursuant to the ECPA, "contents" of a communication, when used with respect to any wire, oral, or electronic communications, include any information concerning the substance, purport, or meaning of that communication. 18 U.S.C. § 2510(8). The definition thus includes all aspects of communication itself. The privacy of the communication to be protected is intended to be comprehensive.

43. Plaintiff's computers and computer networks constitute "electronic computer systems." Plaintiff transmit "electronic communications" by and through its computers and computer networks in the form of, among others, emails, sending requests to visit websites, online chats, file transfers, file uploads, and file downloads.

44. Barton's conduct violated 18 U.S.C. § 2511(1)(a) because she intentionally intercepted Plaintiff's electronic communications to, from, and within its computers and computer networks.

45. Barton's conduct violated 18 U.S.C. § 2511(1)(d) because she used and endeavored to use the contents of Plaintiff's electronic communications to profit from its unauthorized disclosure, knowing and having reason to know that the information was obtained through violation of 18 U.S.C. § 2511(1).

46. Barton intentionally obtained and/or intercepted, by device or otherwise, these electronic communications, without the knowledge, consent, or authorization of Plaintiff.

47. Plaintiff suffered harm as a result of Barton's violation of the ECPA, and therefore seek damages. *See* Prayer for Relief.

**COUNT THREE**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA"),**
**18 U.S.C. § 1030**
**(Against Defendant Barton)**

48. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

49. Barton intentionally accessed a computer without authorization and/or exceeded any authorized access and in doing so intentionally breached her NDA.

50. Barton illegally obtained this information from Plaintiff's computer.

51. By scanning and removing information from local and network files, Barton accessed Plaintiff's computer, in excess of authorization provided by Plaintiff as directed in 18 U.S.C. § 1030(a)(2)(C).

52. Barton violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing Plaintiff's computer and computer network without authorization and/or by exceeding the scope of that authorization.

53. Plaintiff's computers are protected computers pursuant to 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and/or communication.

54. By accessing, collecting, and transmitting Plaintiff's data without authorization, Barton intentionally caused damage to those computers by impairing the integrity of information and/or data.

55. Through the conduct described herein, Barton violated 18 U.S.C. § 1030(a)(5)(A)(iii).

56. As a result, Barton has caused loss to Plaintiff in real economic damages.

57. Plaintiff has expended time, money, and resources to investigate what Barton transmitted when she exceeded the scope of her authorization in using Plaintiff's computer.

58. Plaintiff has additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

59. Barton's actions were knowing and/or reckless and caused harm to Plaintiff. *See* Prayer for Relief.

**COUNT FOUR**
**MISAPPROPRIATION OF TRADE SECRETS UNDER**
**THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *et seq.***
**(Against Defendant Barton)**

60. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

61. Defendants acquired knowledge of Plaintiff's confidential, proprietary, and trade secret information under circumstances that gave rise to a duty to limit the use of the trade secrets to uses to which only benefit Plaintiff.

62. Barton acquired extensive knowledge of Plaintiff's confidential, proprietary, and trade secret information in the course of his employment at Grassroots and/or as a Board member of Grassroots and/or as an interest holder at PDA, a Grassroots subsidiary.

63. All Grassroots' executives, employees, contractors, and Grassroots-engaged persons had and have a duty to maintain the secrecy of Plaintiff's confidential, proprietary, and trade secret information.

64. Barton, by signing the NDA, acknowledged that the confidential, proprietary, and trade secret information was secret, and agreed to hold the information in the strictest confidence, and use it only for the benefit of Plaintiff.

65. Upon information and belief, Barton misappropriated Plaintiff's confidential, proprietary, and trade secret information in violation of the Defense of Trade Secrets Act, when she took those Trade Secrets by improper means (via her violation of the Computer Fraud and Abuse Act) and used them, among other things as described above, to compete with and/or act in a manner materially adverse to Plaintiff's interests, and/or solicit Plaintiff's clients.

66. Barton possesses certain confidential, proprietary, and trade secret information, including (1) data on politically active individuals ("donor profile data"), (2) market research on

new business opportunities, (3) pricing models, and (4) proprietary software to search, organize, and sort donor profile data.

67. Plaintiff's confidential, proprietary, and trade secret information is not publicly known. As discussed above, access to the confidential, proprietary, and trade secret information is limited to those individuals employed or otherwise engaged by Plaintiff for the sole benefit of Plaintiff.

68. As discussed above, Plaintiff takes reasonable measures to protect its confidential, proprietary, and trade secret information. Plaintiff requires that every Member, executive, employee, or otherwise, not disclose confidential, proprietary, and trade secret information and not to use confidential, proprietary, and trade secret information for any purpose other than solely as necessary for the exclusive benefit of Plaintiff, as authorized by Plaintiff.

69. Plaintiff's confidential, proprietary, and trade secret information has significant economic value. As mentioned previously, Plaintiff's business is highly competitive. Plaintiff's confidential, proprietary, and trade secret information were developed to provide Plaintiff with a competitive advantage and to establish and maintain Plaintiff's relationships with its clients.

70. Upon information and belief, Barton misappropriated Plaintiff's confidential, proprietary, and trade secret information when she disclosed and/or used that information for the benefit of herself and/or for other competing businesses, such as Tall Poppy.

71. Barton's misappropriation has provided a significant competitive advantage to herself and to those she is disclosing Plaintiff's confidential, proprietary, and trade secret information, as she is able to save time, effort, and money by gaining access to Plaintiff's confidential, proprietary, and trade secret information, such as data on politically active individuals

("donor profile data"), market research on new business opportunities, pricing models, and proprietary software to search, organize, and sort donor profile data.

72. Barton's conduct has damaged Plaintiff and constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836. *See* Prayer for Relief.

## COUNT FIVE
## BREACH OF FIDUCIARY DUTY
### (Against Defendant Barton)

73. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

74. Barton, as a Grassroots board member, had a fiduciary duty to Plaintiff, which required that she act in good faith in the interests of the company, disclose information that is relevant to its affairs, and refrain from placing herself in apposition that is antagonistic to Plaintiff.

75. Barton flagrantly breached her fiduciary duty through the various harmful acts alleged above, and her efforts to collude with other political fundraising companies, such as Tall Poppy, to steal Plaintiff's confidential, proprietary, and trade secret information.

76. As a result of Barton's conduct described above, she has acted with ill will, a desire to injure Plaintiff, actual malice, and in willful disregard for the rights of Plaintiff.

77. As a direct and proximate result of these breaches, Plaintiff has suffered significant harm, entitling it to damages in an amount not ascertainable at this time.

## COUNT SIX
## TORTIOUS INTERFERENCE WITH PLAINTIFF'S BUSINESS RELATIONS
### (Against Defendant Tall Poppy)

78. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

79. As described above, a business relationship existed between Plaintiff and Barton.

80. Tall Poppy was aware of Plaintiff's business relationship with Barton and intentionally interfered with Plaintiff's relationship with Barton with the aim of harming Plaintiff's business relationship with Barton.

81. Tall Poppy, via McKissick-Hawley, used many improper and unlawful means to interfere with that business relationship, including, but not limited to, relentless text messages to Barton, which was destructive to Plaintiff's interests.

82. For example, on December 2, 2021, Ms. Mckissick-Hawley, acting with and for Tall Poppy, asked Ms. Barton "Can I send u some lists to match with giving history plz," and offered to fly Ms. Barton to meet with her. **Exhibit 10, Mckissick-Hawley text message to Barton requesting confidential information.**

83. Additionally, On December 6, 2021, Ms. Mckissick-Hawley, acting with and for Tall Poppy, stated to Ms. Barton "I feel relieved knowing we are going to be together" "Eric said to reach out to him. He wants u to help him with some things" and "We got this babe. Will make it into the blockbuster. You'll help me and Eric – get paid by that, stay stable financially- and slowly build back the company of your dreams. And by slowly, I mean 2-3 months. Your life will be so awesome by February." **Exhibit 11, text messages between Mckissick-Hawley and Barton.**

84. Also on December 6, 2021, Ms. Barton stated to Ms. Mckissick-Hawley "Damn ok I think I transferred everyone. *everything. Keeping my pitch meeting on the books just transferred to my personal email." Ms. Mckissick-Hawley, acting with and for Tall Poppy, replied "Yes Kate! U got this honey. And if u want to start using a kate@tallpoppy to make more official, happy to move you to our fajita! Hahahahaha. Gsuite. Autocorrect." **Exhibit 12, text messages between Mckissick-Hawley and Barton regarding transferring information after termination.**

16

85. In another exchange, Ms. Barton stated to Ms. Mckissick-Hawley "It's such inside baseball. In the grand scheme, C2G is a bug on the windshield. Their reputation will worsen and we can take their clients away from them but not sure where it goes past that." To which Ms. Mckissick-Hawley, acting with and for Tall Poppy, replied "Can you send me list of who they work with at GA and I'll literally poach their asses tomorrow." Ms. Barton replied "Yes," and then sent Ms. Mckissick-Hawley a list of Grassroots' clients. **Exhibit 13, text messages between Mckissick-Hawley and Barton regarding Grassroots' confidential information.**

86. Tall Poppy deliberately acted in a manner contrary to Plaintiff's interests, by sabotaging Plaintiff's relationship with Barton and by advancing its own personal agenda and interest that were contrary to Plaintiff's interests.

87. As a result of Tall Poppy's conduct described above, it has acted with ill will, a desire to injure Plaintiff, actual malice, and in willful disregard for the rights of Plaintiff.

88. The tortious interference by Tall Poppy has damaged Plaintiff in that Barton stole, thereby further worsening the financial condition of Plaintiff. Plaintiff seeks to recoup its damages and losses. *See* Prayer for Relief.

**COUNT SEVEN**
**CONSPIRACY**
**(Against all Defendants)**

89. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

90. Upon information and belief, Barton conspired with others, including other Plaintiff's competitor companies, such as Tall Poppy, to steal Plaintiff's confidential, proprietary, and trade secret information, in an effort to unlawfully inflict damage on Plaintiff's business and benefit its own.

91. Defendants committed a variety of unlawful acts in furtherance of this conspiracy.

92. For example, on December 2, 2021, Ms. Mckissick-Hawley, acting with and for Tall Poppy, asked Ms. Barton "Can I send u some lists to match with giving history plz," and offered to fly Ms. Barton to meet with her. **Exhibit 10, Mckissick-Hawley text message to Barton requesting Grassroots' confidential information.**

93. Additionally, On December 6, 2021, Ms. Mckissick-Hawley, acting with and for Tall Poppy, stated to Ms. Barton "I feel relieved knowing we are going to be together" "Eric said to reach out to him. He wants u to help him with some things" and "We got this babe. Will make it into the blockbuster. You'll help me and Eric – get paid by that, stay stable financially- and slowly build back the company of your dreams. And by slowly, I mean 2-3 months. Your life will be so awesome by February." **Exhibit 11, text messages between Mckissick-Hawley and Barton.**

94. In another exchange, Ms. Barton stated to Ms. Mckissick-Hawley "It's such inside baseball. In the grand scheme, C2G is a bug on the windshield. Their reputation will worsen and we can take their clients away from them but not sure where it goes past that." To which Ms. Mckissick-Hawley, acting with and for Tall Poppy, replied "Can you send me list of who they work with at GA and I'll literally poach their asses tomorrow." Ms. Barton replied "Yes," and then sent Ms. Mckissick-Hawley a list of Grassroots' clients. **Exhibit 13, text messages between Mckissick-Hawley and Barton regarding confidential information.**

95. Additionally, Barton, without authorization, emailed to herself on her personal email address Plaintiff's confidential, proprietary, and trade secret information from her work computer, for use after her employment with Plaintiff ended.

96. As further evidence of conspiracy amongst the co-conspirators, on December 6, 2021, Ms. Barton stated to Ms. Mckissick-Hawley "Damn ok I think I transferred everyone.

*everything. Keeping my pitch meeting on the books just transferred to my personal email." Ms. Mckissick-Hawley, acting with and for Tall Poppy, replied "Yes Kate! U got this honey. And if u want to start using a kate@tallpoppy to make more official, happy to move you to our fajita! Hahahahaha. Gsuite. Autocorrect." **Exhibit 12, text messages between Mckissick-Hawley and Barton regarding transferring information after termination.**

97. As a result of this conspiracy, Plaintiff has suffered substantial irreparable harm in an amount that is not ascertainable at this time.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment if its favor and against Defendants as follows:

(a) Damages in an amount to exceed $75,000 to be proven at trial.

(b) A permanent injunction prohibiting all Defendants from further accessing Plaintiff's confidential, proprietary, and trade secret information;

(c) A permanent injunction prohibiting all Defendants from unfairly competing with Plaintiff by using Plaintiff's confidential, proprietary, and trade secret information misappropriated by Barton;

(d) A finding that all Defendants have no right to use Plaintiff's confidential, proprietary, and trade secret information;

(e) The return to Plaintiff any confidential, proprietary, and trade secret information which Barton has wrongfully taken and disclosed and others have wrongfully received;

(f) Treble, punitive and exemplary damages to the maximum extent available under the federal and state laws forming the basis of Plaintiff's claims herein;

(g) Attorneys' fees and costs of suit herein; and

(h) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

December 13, 2021

/s/ Daniel S. Ward
_____
Daniel S. Ward (DC Bar 474339)
Ryan C. Berry (DC Bar 155889)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com

*Attorneys for Plaintiff*
*Grassroots Analytics LLC*